UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LAMONT D. ROBINSON,

       Petitioner,

                           CASE NO. 5:13-CV-13145
v.                          JUDGE JOHN CORBETT O'MEARA
                            MAGISTRATE JUDGE PAUL KOMIVES

KENNETH McKEE,

       Respondent.
_____/

## REPORT AND RECOMMENDATION ON RESPONDENT'S MOTION FOR SUMMARY JUDGMENT (docket #9)

I.     RECOMMENDATION: The Court should conclude that petitioner's application for the writ of habeas corpus is barred by the one year statute of limitations contained in 28 U.S.C. § 2244(d). Accordingly, the Court should grant respondent's motion for summary judgment. If the Court accepts this recommendation, the Court should also deny petitioner a certificate of appealability.

II.    REPORT:

A.    *Procedural Background*

Petitioner Lamont D. Robinson is a state prisoner, currently confined at the Bellamy Creek Correctional Facility in Ionia, Michigan. Petitioner is serving a life sentence imposed following his 1993 conviction for felony murder. Petitioner's application and the state court record reveal the following time line of the state court proceedings:

- Petitioner was convicted following a jury trial in the Wayne County Circuit Court. In July 1993 the trial court imposed its sentence.

- Petitioner, through counsel, filed a delayed application for leave to appeal in the Michigan Court of Appeals. The court of appeals issued an opinion affirming petitioner's convictions on September 12, 1995. *See People v. Robinson*, No. 167818 (Mich. Ct. App. Sept. 12, 1995).

- Petitioner filed a delayed application for leave to appeal in the Michigan Supreme Court. On October 22, 1996, the court denied petitioner's application, and on January 28, 1997, the court denied petitioner's motion for reconsideration. *See People v. Robinson*, 453 Mich. 912, 554 N.W.2d 904 (1996), *reconsideration denied*, 558 N.W.2d 726 (1997).

- Several years later, petitioner filed a motion for relief from judgment in the trial court pursuant to MICH. CT. R. 6.500-.509.[1] The trial court denied the motion on January 14, 2011. *See People v. Robinson*, No. 92-007691-01 (Wayne County, Mich., Cir. Ct. Jan. 14, 2011).

- Petitioner sought leave to appeal in the Michigan Court of Appeals. The court of appeals denied petitioner's application in a standard order on December 8, 2011. *See People v. Robinson*, No. 305178 (Mich. Ct. App. Dec. 8, 2011).

- Petitioner thereafter sought leave to appeal in the Michigan Supreme Court. That court denied petitioner's application for leave to appeal in a standard order on July 24, 2012. *See People v. Robinson*, 492 Mich. 853, 817 N.W.2d 88 (2012).

- Meanwhile, petitioner filed a second motion for relief from judgment in the trial court on February 14, 2012. The trial court denied this motion on January 15, 2013. *See People v. Robinson*, No. 92-007691-01 (Wayne County, Mich., Cir. Ct. Jan. 15, 2013).

- Petitioner sought leave to appeal in the Michigan Court of Appeals. The court dismissed petitioner's appeal on July 2, 2013. *See People v. Robinson*, No. 316416 (Mich. Ct. App. July 2, 2013).

- Petitioner thereafter sought leave to appeal in the Michigan Supreme Court. The court denied petitioner's application on December 13, 2013. *See People v. Robinson*, 840 N.W.2d 349.

On July 17, 2013, while petitioner's second motion for relief from judgment was pending on appeal, petitioner filed this application for the writ of habeas corpus pursuant to 28 U.S.C. § 2254.[2]

---

[1]The state court docket sheet does not clearly reflect when this motion was filed. Respondent asserts that the motion was filed sometime in January 2011. In his reply, petitioner contends that he filed this motion in January 2008. As will be discussed below, petitioner's application is untimely in either event.

[2]Although petitioner's application is file-stamped July 22, 2013, it is well-established that a habeas petition is deemed "filed" for purposes of the statute of limitations on the date the petitioner gives his motion to prison officials for mailing. *See In re Sims*, 111 F.3d 45, 47 (6th Cir. 1997); *Beckovich v. Coyle*, 22 F. Supp. 2d 722, 723 (N.D. Ohio 1998); *cf. Houston v. Lack*, 487 U.S. 266, 270 (1988).

Petitioner raises nine grounds for relief: four claims of instructional error; prosecutorial misconduct; improper expert testimony; ineffective assistance of trial counsel; ineffective assistance of appellate counsel; and lack of probable cause. Petitioner filed a supplement to the petition on January 30, 2014, raising claims of perjured testimony and actual innocence based on newly discovered evidence. Respondent filed a motion for summary judgment on February 3, 2014, arguing that petitioner's habeas application is untimely. On February 19, 2014, petitioner filed a response to the motion. For the reasons that follow, the Court should grant respondent's motion for summary judgment and deny petitioner's motions.

B.   *Analysis*

   1.   *Statutory Timeliness and Tolling*

Respondent argues that petitioner's application is barred by the one-year statute of limitations governing habeas petitions. On April 24, 1996, President Clinton signed into law the Antiterrorism and Effective Death Penalty Act (AEDPA), Pub. L. No. 104-132, 110 Stat. 1220 (Apr. 24, 1996). In relevant part, the AEDPA amended 28 U.S.C. § 2244 to provide a one year statute of limitations for habeas petitions. Specifically, the statute as amended by the AEDPA provides:

>   (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of–
>   (A) the date on which the judgment became final by the conclusion of direct review of the expiration of the time for seeking such review;
>   (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>   (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

---

Petitioner's application is signed and dated July 17, 2013. Accordingly, I assume that the petition was given to prison officials for mailing, and was thus "filed," on July 17, 2013.

> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).[3]

As the language of the statute indicates, there are four possible dates on which the limitations period may begin to run. Assuming that the default provision of subparagraph (A) applies, petitioner's application is untimely. Under subparagraph (A) of § 2244(d),

> a judgment of conviction does not become "final" . . . until the Supreme Court affirms the conviction and sentence on the merits or denies a timely filed petition for certiorari.
> In addition, if a defendant does not file a certiorari petition, the judgment of conviction does not become "final" until the time for seeking certiorari review expires.

*Kapral v. United States*, 166 F.3d 565, 570-71 (3d Cir. 1999); *see also*, *United States v. Simmonds*, 111 F.3d 737, 744 (10th Cir. 1997) (conviction became final upon denial of certiorari); *Torres v. Irvin*, 33 F. Supp. 2d 257, 271 (S.D.N.Y. 1998) ("[A] judgment of conviction only becomes final upon the expiration of the ninety days to seek a writ of certiorari from the United States Supreme Court."); *United States v. Dorsey*, 988 F. Supp. 917, 918 (D. Md. 1998) (same); *cf. Penry v. Lynaugh*, 492 U.S. 302, 314 (1989) (for purpose of determining whether application of new rule of law would be an impermissible retroactive application to a case which has already become final, conviction becomes final upon denial of the defendant's petition for certiorari); *Griffith v. Kentucky*, 479 U.S. 314, 321 n.6 (1987) ("By 'final,' we mean a case in which a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for

---

[3]The AEDPA codified a one-year statute of limitations provision for motions to vacate federal convictions brought under 28 U.S.C. § 2255 which is nearly identical to the one found in § 2244(d)(1). *See* 28 U.S.C. § 2255 para. 6. Accordingly, cases discussing the § 2255 statute of limitations are applicable here.

certiorari finally denied.").

Here, petitioner's direct appeal concluded on January 28, 1997, when the Michigan Supreme Court denied his motion for reconsideration. Petitioner's conviction became final 90 days later, or on April 28, 1997, when his time for seeking *certiorari* in the United States Supreme Court expired. Thus, the limitations period commenced on April 29, 1997, and expired one year later on April 29, 1998, absent any tolling.

Under § 2244(d)(2), the limitations period is tolled for "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending[.]" Petitioner's first motion for relief from judgment was filed in the trial court, at the earliest, in January 2008. By this time, the limitations period had been expired for almost 10 years. It is well established that subsection (d)(2) is a tolling provision and therefore a post-conviction motion only pauses the limitations clock; it "does not reset the date from which the one-year statute of limitations begins to run." *Smith v. McGinnis*, 208 F.2d 13, 17 (2d Cir. 2000); *see also*, *Brooks v. McKee*, 307 F. Supp. 2d 902, 905 (E.D. Mich. 2004) (Gadola, J.). Thus, defendant's motion for relief from judgment had no tolling effect, and petitioner's application is untimely.

    2.    *Petitioner's Arguments*

Although petitioner does not challenge the foregoing calculation of the limitations period, he does explicitly raise one argument for denying respondent's motion. Specifically, he contends that he is entitled to a delayed starting or equitable tolling of the limitations period based on his attempts to obtain counsel to assist him in filing his first motion for relief from judgment. Further, although not explicitly asserted by petitioner, his response suggests that he is raising three additional arguments: an entitlement to equitable tolling based on his various attorneys' withdrawal from the case; delayed starting based on newly discovered evidence; and actual innocence.

*a. Attempts to Obtain Counsel*

Petitioner contends that he filed motions for appointment of counsel on February 18 and March 1, 1998, but these were lost by the clerk, requiring him to file another motion for counsel. He was ultimately appointed counsel on August 31, 1998. He further contends that three of his appointed attorneys withdrew, and his motion was therefore not filed until January 2008. He contends that the misplacement of his motions for appointment of counsel constituted a state created impediment to filing, entitling him to a delayed starting of the limitations period under § 2244(d)(1)(B).

"In order to invoke § 2244(d)(1)(B), the prisoner must show that: (1) he was prevented from filing a petition (2) by State action (3) in violation of the Constitution or federal law." *Egerton v. Cockrell*, 334 F.3d 433, 436 (5th Cir. 2003). "'Section 2244(d)(1)(B) requires a causal relationship between the unconstitutional state action and being prevented from filing the petition.'" *Winkfield v. Bagley*, 66 Fed. Appx. 578, 583 (6th Cir. 2003) (quoting *Dunker v. Bissonnette*, 154 F. Supp. 2d 95, 105 (D. Mass. 2001). Thus, to invoke this provision a petitioner must "'allege facts that establish that he was so inhibited by the state's action that he was unable to file and state a legal cause of action before the limitations period expired." *Winfield*, 66 Fed. Appx. at 583 (quoting *Neuendorf v. Graves*, 110 F. Supp. 2d 1144, 1153 (N.D. Iowa 2000) (internal quotation omitted)). Here, petitioner cannot make this showing. First, it is doubtful that the mere loss of petitioner's motions for the appointment of counsel constituted *unconstitutional* state action. It is well established that nothing in the Constitution requires a state to establish a system of postconviction review, and thus "an infirmity in a state post-conviction proceeding does not raise a constitutional issue[.]" *Gee v. Groose*, 110 F.3d 1346, 1351-52 (8th Cir. 1997) (internal quotation omitted); *accord Cress v. Palmer*, 484 F.3d 844, 853 (6th Cir.2007). And it is equally well established that a defendant has no constitutional right to a lawyer to pursue state postconviction review. *See Pennsylvania v. Finley*, 481 U.S. 551, 557 (1987)

("States have no obligation to provide this avenue of relief, and when they do, the fundamental fairness mandated by the Due Process Clause does not require that the State supply a lawyer as well.").

Second, even if petitioner could show that the loss of his motion for appointment of counsel amounted to unconstitutional state action, he cannot show that this action created an impediment to filing his federal habeas petition. As another court has explained: "Section 2244(d)(1)(B) pertains only to state-imposed impediments that prevent prisoners from filing a *federal* petition for a writ of habeas corpus. [Petitioner] cites no authority–nor has the court's own research revealed any–to support the conclusion that an impediment to filing a petition for review in state court constitutes an impediment to filing a federal habeas petition, within the meaning of section 2244(d)(1)(B)." *United States ex rel. Willhite v. Walls*, 241 F. Supp. 2d 882, 886-87 (N.D. Ill. 2003). Petitioner does not explain how the loss of his motion for appointment of counsel in connection with the state court postconviction proceedings impaired his ability to file a habeas petition in federal court.

Third, even assuming that petitioner could establish his entitlement to delayed commencement of the limitations period under § 2244(d)(1)(B), his application is still untimely. By its plain terms, the limitations clock starts under § 2244(d)(1)(B) once the impediment to filing is "removed." Here, at the latest, the impediment was removed on August 31, 1998, when petitioner claims counsel was actually appointed. From that date until the purported filing of petitioner's motion for relief from judgment in January 2008 over nine years elapsed, rendering petitioner's application untimely even if he is given the benefit of delayed commencement under § 2244(d)(1)(B). Accordingly, the Court should conclude that petitioner's application is untimely notwithstanding his invocation of § 2244(d)(1)(B).

### b. *Equitable Tolling*

7

Although he does not explicitly argue the point, petitioner's response suggests that he is entitled to equitable tolling of the limitations period in light of the repeated withdrawals of his counsel in the state post conviction proceedings. The habeas limitations provision set forth in § 2244(d) "is subject to equitable tolling in appropriate cases." *Holland v. Florida*, 560 U.S. 631, 645 (2010). To be entitled to equitable tolling of the limitations period, petitioner "must show '(1) that he had been pursing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Lawrence v. Florida*, 549 U.S. 327, 336 (2007) (quoting *Pace v. Diguglielmo*, 544 U.S. 408, 418 (2005)); *see also*, *Holland*, 560 U.S. at 649. "The petitioner bears the burden of establishing that he is entitled to equitable tolling." *McClendon v. Sherman*, 329 F.3d 490, 494 (6th Cir. 2003). Importantly, diligence alone is not sufficient; petitioner must also show that some extraordinary circumstance prevented him from timely filing his petition. *See Mathis v. Thaler*, 616 F.3d 461, 474-76 (5th Cir. 2010) (petitioner not entitled to equitable tolling even though he had acted diligently).

Petitioner's application does not set forth any basis for a finding of equitable tolling. Neither a prisoner's *pro se* status nor his lack of knowledge of the law constitute extraordinary circumstances justifying equitable tolling. *See Lattimore v. DuBois*, 311 F.3d 46, 55 (1st Cir. 2002); *Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000); *Felder v. Johnson*, 204 F.3d 168, 171 (5th Cir. 2000); *Rodriguez v. Elo*, 195 F. Supp. 2d 934, 936 (E.D. Mich. 2002) (Rosen, J.); *cf. Johnson v. United States*, 544 U.S. 295, 311 (2005) ("[W]e have never accepted pro se representation alone or procedural ignorance as an excuse for prolonged inattention when a statute's clear policy calls for promptness."). Likewise, any errors by counsel in connection with petitioner's postconviction motion do not provide a basis for equitable tolling of the limitations period. Because "mistakes of counsel are constructively attributable to the client," garden-variety errors by counsel are "'not sufficient to

8

warrant equitable tolling, particularly in the postconviction context where prisoners have no constitutional right to counsel.'" *Holland*, 560 U.S. at 656 (Alito, J., concurring in part and dissenting in part) (quoting *Lawrence*, 549 U.S. at 336-37). "Extraordinary" or "egregious" attorney conduct, such as actively hindering a prisoner's ability to file, may justify equitable tolling, *see Holland*, 560 U.S. at 651-52, but petitioner has identified no such extraordinary or egregious conduct here.

Moreover, even if the withdrawals of petitioner's attorneys constituted an exceptional circumstance justifying equitable tolling, petitioner has failed to show that he acted with diligence in pursuing his rights. Petitioner was first appointed counsel in August 1998, yet did not file his first motion for relief from judgment until January 2008, at the earliest. Petitioner has given no indication that he took any steps to pursue his rights in the over seven year period between counsel's appointment and the filing of his motion. The trial court docket sheet shows no filings over this period. This long span of time with no attempt by petitioner to pursue his rights suggests a lack of diligence. *See Hall v. Warden, Lebanon Correctional Inst.*, 662 F.3d 745, 751 (6th Cir. 2011) (petitioner's failure to pursue his rights in five month period in which he still had time to file habeas petition "suggests a lack of diligence."); *Diaz v. Milyard*, 314 Fed. Appx. 146, 148 (10th Cir. 2009) (petitioner not entitled to equitable tolling based on lack of access to court records and transcripts where petitioner did not request such records until four years after limitations period began to run). Accordingly, the Court should conclude that petitioner is not entitled to equitable tolling of the limitations period.

### c. Newly Discovered Evidence

In his second motion for relief from judgment in the state court, petitioner presented newly discovered evidence and, based on that evidence, a claim that the prosecution presented perjured testimony. Petitioner presents this claim here in his supplement to his original habeas application.

This newly discovered evidence does not entitle petitioner to a delayed commencement of the limitations period under § 2244(d)(1)(D). This provision requires a court to review the factual predicate of petitioner's claims and determine whether they could have been discovered prior to when his conviction became final. It "does not postpone the accrual of limitations based on a *pro se* litigant's or an attorney's belated discovery or realization of the legal consequences of known facts. Rather, postponed accrual is in order only if the facts themselves supporting a legal claim were undiscoverable in a timely fashion, despite due diligence." *Fraser v. United States*, 47 F. Supp. 2d 629, 630 (D. Md. 1999). In short, the operative inquiry is whether the facts themselves, rather than the legal import of or evidence supporting them, could not have been discovered through the exercise of reasonable diligence. *See United States v. Pollard*, 416 F.3d 48, 55 (D.C. Cir. 2005); *Owens v. Boyd*, 235 F.3d 356, 359 (7th Cir. 2000); *Brooks v. McKee*, 307 F. Supp. 2d 902, 905-06 (E.D. Mich. 2004) (Gadola, J.); *Hereford v. McCaughtry*, 101 F. Supp. 2d 742, 745 (E.D. Wis. 2000). As the Fifth Circuit has explained, "[s]ection 2244(d)(1)(D) does not convey a statutory right to an extended delay . . . while a habeas petitioner gathers every possible scrap of evidence that might . . . support his claim." *Flanagan v. Johnson*, 154 F.3d 196, 199 (5th Cir. 1998); *accord Tate v. Pierson*, 177 F. Supp. 2d 792, 800 (N.D. Ill. 2001). Petitioner bears the burden of establishing his entitlement to delayed commencement under § 2244(d)(1)(D). *See Redmond v. Jackson*, 295 F. Supp. 2d 767, 772 (E.D. Mich. 2003) (Gadola, J.). To meet this burden, petitioner must "specify how the factual predicate of his claims could not have been discovered earlier" and "indicate what steps, if any, he took to discover these claims." *Grayson v. Grayson*, 185 F. Supp. 2d 747, 750 (E.D. Mich. 2002) (Roberts, J.).

Petitioner's newly discovered evidence is the affidavit of Kimberly Mitchell, a prosecution witness at trial, in which she avers that the testimony she gave at trial was false, and was the product of police coercion. Mitchell's affidavit is dated February 10, 2012. However, petitioner nowhere

10

states when he became aware of Mitchell's willingness to recant her trial testimony, nor does he "indicate what steps, if any, he took to discover these claims." *Grayson*, 185 F. Supp. at 750. Indeed, as will be discussed in more detail below, it was clear at the time of trial that Mitchell was an extremely reluctant witness, providing a basis for petitioner to investigate the claim that is revealed by Mitchell's affidavit. Petitioner does not "explain why a reasonable investigation would not have unearthed the facts prior to the date under which the limitation period commenced under 28 U.S.C. § 2244(d)(1)(A)." *Magano v. Mims*, No. 3:10cv525, 2011 WL 4073260, at *8 (E.D. Va. Sept. 13, 2011) (citing *In re Boshears*, 110 F.3d 1538, 1540-41 (11th Cir.1997)). "[P]etitioner cannot invoke the provisions of § 2244(d)(1)(D) with respect to [Mitchell's] affidavit[], because petitioner does not state when he learned about the underlying facts contained in th[at] affidavit[], as opposed to when the affidavit[] w[as] actually signed." *Webb v. Wolfenbarger*, No. 2:08-12692, 2009 WL 369482, at *5 (E.D. Mich. Feb. 11, 2009) (Steeh, J.); *cf. Cochran v. Dodson*, No. 1:04-CV-384, 2005 WL 1804530, at *3 (E.D. Tenn. July 27, 2005) (noting that "[t]he date on which Ms. Auble signed her affidavit does not appear to be the date on which petitioner could have discovered the factual predicate for her claim . . . ."); *Chism v. Johnson*, No. 3-99-CV-2412-BD, 2000 WL 256875, at *2 (N.D. Tex. Mar. 7, 2000) (rejecting argument that petitioner could not have discovered the factual predicate of his claim until witness executed affidavit recanting trial testimony). Accordingly, the Court should conclude that petitioner is not entitled to delayed commencement under § 2244(d)(1)(D).[4]

---

[4]Importantly, in applying the delayed commencement provisions set forth in § 2244(d)(1)(B)-(D), a court must apply a claim-by-claim approach. *See Souliotes v. Evans*, 622 F.3d 1173, 1179-80 (9th Cir. 2010); *Fielder v. Varner*, 379 F.3d 113, 117-20 (3d Cir. 2004); *cf. Pace v. DiGuglielmo*, 544 U.S. 408, 416 n.6 (2005) (emphasis added) (explaining, in dicta, that § 2244(d)(1) "provides one means of calculating the limitation with regard to the "application" as a whole, § 2244(d)(1)(A) (date of final judgment), *but three others that require claim-by-claim consideration*, § 2244(d)(1)(B) (governmental interference); § 2244(d)(1)(C)

*d. Actual Innocence*

Finally, the Court should conclude that petitioner is not entitled to consideration of his claims notwithstanding the statute of limitations based on his assertion of actual innocence.

The Supreme Court has recently held that the actual innocence exception, which allows a court to review the merits of a habeas claim notwithstanding a procedural default, likewise exists for the habeas statute of limitations. *See McQuiggin v. Perkins*, 133 S. Ct. 1924, 1928 (2013). In order to be entitled to the actual innocence exception, however, a petitioner must present "new and reliable evidence that was not presented at trial" that "show[s] that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 299 (1995). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Schlup*, 513 U.S. at 327 (internal citation and quotation omitted). It is not sufficient to show merely that the evidence raises a reasonable doubt which did not otherwise exist. *See id.* at 329 ("The meaning of actual innocence . . . does not merely require a showing that a reasonable doubt exists in light of the new evidence, but rather that no reasonable juror would have found the defendant guilty."). "Examples of evidence which may establish factual innocence include credible declarations of guilt by another, trustworthy eyewitness accounts, and exculpatory scientific evidence." *Pitts v. Norris*, 85 F.3d 348, 350-51 (8th Cir. 1996) (citations omitted); *accord Schlup*, 513 U.S. at 324 (referring to "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence"). *See generally*,

---

(new right made retroactive); § 2244(d)(1)(D) (new factual predicate)."); *Ege v. Yukins*, 485 F.3d 364, 373 (6th Cir. 2007) (explaining, in applying § 2244(d)(1)(D), that "[w]e must analyze Ege's two habeas claims separately with regard to . . . the section 2244(d)(1) bar."). Thus, if the Court rejects my recommendation regarding delayed starting under § 2244(d)(1)(D), this would render timely only petitioner's perjury claim asserted in his supplement to the petition; it would not render timely petitioner's other claims.

*Souter*, 395 F.3d at 589-90. "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). Thus, to establish the actual innocence exception "petitioner must show that, as a factual matter, he did not commit the crime for which he was convicted." *Finley v. Johnson*, 243 F.3d 215, 220 (5th Cir. 2001). In asserting the actual innocence exception in the limitations context, a petitioner need not make a threshold showing of diligence. *McQuiggin*, 133 S. Ct. at 1935. Nevertheless, "timing [is] a factor relevant in evaluating the reliability of a petitioner's proof of innocence." *Id.* As the Court explained, "[u]nexplained delay in presenting new evidence bears on the determination whether the petitioner has made the requisite showing." *Id.* In short, "the *Schlup* standard is demanding." *id*. at 1936, and accordingly "tenable actual-innocence gateway pleas are rare," *id*. at 1928.

Here, Mitchell's affidavit falls far short of establishing the type of compelling evidence of actual innocence sufficient to meet the demanding *Schlup* standard. Petitioner was convicted in connection with the 1990 murder of Linda Biute, during an apparent theft from her home. The evidence adduced at trial was summarized in petitioner's brief to the Michigan Court of Appeals on direct appeal:

> The prosecutor [first] called Jill Wright, sister of the deceased, Linda Biute. She testified that she identified her sister's body at the morgue and that her sister was a teacher.
> The next witness was James Robertson, a neighbor of the deceased. When he left his house at 6:30 a.m. on the day in question, he noticed a portable television sitting in the driveway in front of an open window.
> The next witness was Dwight Black, a River Rouge Police Officer. He was called out to the house after Mr. Robertson reported the condition of his neighbor's house to the police. He called for back up and entered the house through the open basement window. He then let in his backup and searched the house which was in shambles. The house appeared to have been broken into. They then found the victim laying across the bed and they called in the homicide investigation team. Later he gave the State Police finger and palm prints.
> The next witness called was Robert Warren, a River Rouge Police Officer. He was called as back up for Dwight Black on the day in question. He testified to the

13

same facts as Officer Black.

The next witness called was Dr. Young A. Chung, an expert in forensic pathology. He examined the deceased and found that she died of two gunshot wounds on the right side of the neck at close range firing.

The next witness called was David Johnson, a Detective for the State of Michigan as an Evidence Technician. He went to the scene of the crime and lifted a palm print from a dresser found in the basement. He later identified the print as belonging to the Defendant, Lamont Robinson by matching eight points of comparison. He also took a video tape of the scene which was then shown to the jury.

The next witness called was John Westerdale, a River Rouge Police Officer, who took photographs of the scene.

The next witness called was Raymond A. Smith, a former Police Officer, who had been convicted of a felony and then went into business for himself. He testified that he was convicted of uttering and publishing in 1986. . . .

He also testified that he was the uncle of Kimberly and Barbara Mitchell who contacted him in May, 1992 which he then reported to Officer Sizemore. He also identified Defendant as someone who lived with his sister for a while, and as someone he employed for about eight months. He also indicated that when he reported the information that he received from his nieces to the police he was not aware that a reward was being offered for it.

The next witness called was Mary Dempsey-Knox, a latent fingerprint examiner for the State of Michigan. She testified that she compared Defendant's palm print with the one at the scene of the crime and concluded that it belonged to Defendant.

The next witness was Barbara Mitchell who grew up with the Defendant for nine years. She testified that Lamont Robinson told her that he had broken into a home, but that she could not recall any of the details. The prosecutor then tried to refresh the recollection of the witness with a transcript which was objected to by the Defendant for lack of foundation. After showing her the transcript the witness stated the name of the person [the defendant] robbed was Linda, but could not recall what happened. Then she stated that she recalled being at a preliminary exam and that there was a court reporter taking down her testimony. When the prosecutor began to impeach her own witness defense counsel objected that the witness was not hostile, she simply could not remember and it is improper to read her prior testimony to her because she has not embraced her prior testimony. The court then allowed the prosecutor to read the prior testimony to the witness in front of the jury after the witness read the transcript to herself and testified she could not recollect it. Once again the Defendant objected and [was] overruled. Then the prosecutor proceeded to read the questions and answers regarding her prior testimony in front of the jury asking whether she recalled it which she [did] not.

Then the witness was asked to identify a document, proposed Exhibit #24. The witness testified that it was a statement written by her on June 2, 1991, but she could not recall its contents. When the prosecutor began to read its contents, defense objected on the grounds of hearsay, and insufficient foundation. The prosecutor then proposed the document as an exhibit and Defendant objected again on the basis of

14

>hearsay which was overruled. . . .
>
>The next witness called was Kimberly Mitchell, step-sister of the Defendant. She too failed to remember that Defendant discussed committing a crime. She also stated that she recalled being at a preliminary exam, giving testimony, but she could not recall her testimony. She also recalled that there was a court reporter there. The prosecutor then read her excerpts from the transcript which she failed to remember. Once again Defendant objected. The prosecutor then asked the witness if she could remember excerpts from the preliminary exam which she could not.
>
>Then she was asked if she recognized proposed Exhibit #25. She stated she recognized that it was in her handwriting, but not the contents of it. She also remembered being at the River Rouge Police Department on June 2, 1992. When the prosecutor began to read excerpts of it to her the Defendant objected. The prosecutor then proposed the exhibit for admission as evidence. Defendant objected and the court overruled it.
>
>The next witness called was Robert Sizemore, River Rouge Police Detective-Lieutenant. He testified that he received information from Raymond Smith on the telephone and based on it he contacted Defendant on June 2, 1992, and took inked comparisons of the palms of his hands. Then he contacted Barbara and Kimberly Mitchell and had them write their own statements. After his testimony the people rested. Defendant moved for a directed verdict. The court denied the motion.
>
>Defense then called Earline Wilson to the stand, mother of the Defendant. She testified that Kimberly and Barbara Mitchell were not friendly toward her or Defendant because of a conflict over insurance benefits from their father.

Def.-Appellant's Br. on Appeal, in *People v. Robinson*, No. 167818 (Mich. Ct. App.), at 2-7.

Against this evidence, Kimberly Mitchell's affidavit does not make it more likely than not that no reasonable jury would have convicted petitioner. These statements are not the type of compelling evidence that establish actual innocence under *Schlup*. It is well established that "recanting affidavits are always viewed with 'extreme suspicion,'" *Matthews v. Ishee*, 486 F.3d 883, 895 (6th Cir. 2007) (quoting *United States v. Chambers*, 944 F.2d 1253, 1264 (6th Cir. 1991)), and thus "[c]ourts are particularly reluctant to grant [new trial] motions where the newly discovered evidence consists of a witness recantation[.]" *United States v. DiPaolo*, 835 F.2d 46, 49 (2d Cir. 1987). New statements from witnesses years after the crime are inherently suspect, *see Schlup*, 513 U.S. at 331, and such statements are to be viewed with "a degree of skepticism." *Herrera*, 506 U.S. at 423 (O'Connor, J., concurring); *see also*, *McCray v. Vasbinder*, 499 F.3d 568, 574 (6th Cir. 2007) (citing *United States*

15

*v. Willis*, 257 F.3d 636, 645 (6th Cir. 2001); *Byrd v. Collins,* 209 F.3d 486, 508 n. 16 (6th Cir. 2000). Moreover, significant evidence in the record apart from Kimberly Mitchell's testimony tied petitioner to the crime. First, there was the otherwise unexplained presence of his palm print in the victim's home. Second, Barbara Mitchell testified at trial (leaving aside her preliminary examination testimony) that petitioner admitted to having broken into a home, and that the home belonged to "Linda," the first name of the victim. Third, both Kimberly and Barbara Mitchell testified at the preliminary examination that petitioner admitted to robbing and killing the victim. Because this testimony was given under oath at the preliminary examination and was inconsistent with their trial testimony, the testimony was admissible as substantive evidence. *See* MICH. R. EVID. 801(d)(1)(A). *See* MICH. R. EVID. 801(d)(1)(A); *People v. Tipton*, No. 216487, 2000 WL 33385187, at *1 (Mich. Ct. App. Dec. 26, 2000); *People v. Andrews*, No. 215200, 2000 WL 33400219, at *2 (Mich. Ct. App. Nov. 21, 2000); *see also*, *United States v. Woods*, 613 F.2d 629, 637 (6th Cir. 1980) (reaching same conclusion under identical Federal Rule of Evidence); *People v. Chavies*, 234 Mich. App. 274, 288-90, 593 N.W.2d 655, 661-62 (1999) (prior inconsistent statement given under oath, which is admissible as substantive evidence, may alone provide sufficient evidence to convict; citing cases).[5]

---

[5]It could be argued that the witnesses' trial testimonies were not inconsistent with their prior preliminary examination testimonies because at trial they merely claimed a lack of recollection. Even if this would take the preliminary examination testimony out of Rule 801(a)(1)(A), this would not help petitioner's assertion of actual innocence. First, in assessing a gateway claim of actual innocence a court is "not bound by the rules of admissibility that would govern at trial," and thus may consider the "probative force" of any "relevant evidence." *Schlup*, 513 U.S. at 327. Second, Mitchell's prior preliminary examination testimony, even if not relevant to the actual innocence inquiry as substantive evidence, is nevertheless relevant in assessing the credibility of her current recantation. Third, had Mitchell testified at trial consistent with her affidavit, there would have been no question that the preliminary examination testimony would have been inconsistent with that testimony and thus admissible as substantive evidence. In assessing petitioner's actual innocence claim, the Court must consider not only the newly discovered evidence presented by petitioner, but also any additional evidence that the new evidence would have permitted to be introduced. *Cf. Wong v. Belmontes,* 130 S. Ct. 383, 386 (2009) (per curiam) (in evaluating petitioner's ineffective assistance claim, "it is

In short Kimberly Mitchell's affidavit, executed 20 years after petitioner's trial, is inconsistent with her prior testimony and with other significant evidence at trial. In these circumstances, the affidavit is insufficient to establish petitioner's actual innocence.

C.      *Recommendation Regarding Certificate of Appealability*

    1.      *Legal Standard*

As amended by the Antiterrorism and Effective Death Penalty Act, section 2253 provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1). The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). As the Sixth Circuit has noted, this language represents a codification of the Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S. 880 (1983), and "[t]he AEDPA thus makes no change to the general showing required to obtain a certificate[.]" *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); *accord Slack v. McDaniel*, 529 U.S. 473, 483 (2000). Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further."'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v.*

---

necessary to consider *all* the relevant evidence that the jury would have had before it if [counsel] had pursued the different path–not just the . . . evidence [counsel] could have presented, but also the [rebuttal evidence] that almost certainly would have come in with it.").

17

*Johnson*, 97 F.3d 751, 755 (5th Cir. 1996) (quoting *Barefoot*, 463 U.S. at 893 n.4)); *accord Slack*, 529 U.S. at 483-84. Although the substantive standard is the same, "[t]he new Act does, however, require that certificates of appealability, unlike the former certificates of probable cause, specify which issues are appealable." *Lyons*, 105 F.3d at 1073. (citing 28 U.S.C. § 2253(c)(3)).

Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. The rule tracks § 2253(c)(3)'s requirement that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253(c)(2)," Rule 11(a), but omits the requirement contained in the pre-amendment version of Federal Rule of Appellate Procedure 22(b)(1) that the court explain "why a certificate should not issue." FED. R. APP. P. 22(b)(1) (version effective prior to 2009 amendment); *see id*., advisory committee note, 2009 amendments. In light of the new Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, I include a recommendation regarding the certificate of appealability issue here.

2. *Analysis*

Where, as here, a petition is dismissed on a procedural basis, the inquiry under § 2253(c) is two-fold. In such a case, a certificate of appealability "should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 485 (emphasis added). As the Court explained, "[w]here a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the

18

petition or that the petitioner should be allowed to proceed further. In such a circumstance, no appeal would be warranted." *Id.* at 486.

If the Court accepts the foregoing recommendation, petitioner cannot show that the Court's ruling on the procedural question is reasonably debatable. As noted above, petitioner's habeas application is untimely by a number of years, and petitioner has provided no basis for concluding that he is entitled to a delayed starting of the limitations period under § 2244(d)(1)(B)-(D) or that he is entitled to equitable tolling. Nor has he made a credible showing of actual innocence. Thus, the resolution of the limitations issue is not reasonably debatable, and the Court should conclude that petitioner is not entitled to a certificate of appealability.

D.    *Conclusion*

In view of the foregoing, the Court should conclude that petitioner's application for the writ of habeas corpus is barred by the statute of limitations governing habeas petitions. Accordingly, the Court should grant respondent's motion for summary judgment and dismiss the petition. If the Court accepts this recommendation, the Court should also deny the certificate of appealability..

III.    <u>NOTICE TO PARTIES REGARDING OBJECTIONS</u>:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370,

19

1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.


Date: March 12, 2014               s/Paul J. Komives
                                   PAUL J. KOMIVES
                                   UNITED STATES MAGISTRATE JUDGE



CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on March 12, 2014.

                                   s/ Kay Doaks
                                   Case Manager